## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| **MURPHY ROAD RECYCLING, LLC** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **Case No.** |
| v. ) | |
| ) | **JURY DEMAND** |
| **CATHCART RAIL, INC.** ) | |
| ) | |
| **Defendant.** ) | |

## COMPLAINT

Through its counsel of record, and for its Complaint, Plaintiff Murphy Road Recycling, LLC ("Murphy Road") states that:

## INTRODUCTION

1. This case arises from Defendant Cathcart Rail, Inc.'s misrepresentations of the location where it performed $587,080.12 of unauthorized, unnecessary, excessive, and unwarranted repairs to Murphy Road's fleet of railcars, purportedly through the Interchange Rules promulgated by the Association of American Railroads (the "AAR"). These misrepresentations, which occurred before, during and after certain unauthorized, unnecessary, excessive, and unwarranted repairs, were designed to (and did) deceive Murphy Road into believing all of the repairs were unobjectionable under certain rules that govern aspects of both parties' businesses. More importantly, Defendant harmed Murphy Road by, without limitation, leading it to believe it had no grounds to challenge certain invoices that Defendant subsequently prosecuted against it via AAR arbitration pursuant to the AAR's Interchange Rules and by performing repairs that were unauthorized, unnecessary, excessive, and unwarranted.

#30031581v1

## THE PARTIES

2. Murphy Road is a Connecticut Limited Liability Company. Its principal place of business is in Enfield, Connecticut. Murphy Road has a single member, Murphy Road Holdings, Inc., a Connecticut corporation that maintains its principal place of business in Connecticut.

3. Defendant is an Illinois corporation. Its principal place of business is at 55 West Monroe Street, Suite 3625, Chicago, Illinois 60603. It is registered to conduct business in Ohio, and conducts business throughout Ohio, including in this judicial district.

## JURISDICTION AND VENUE

4. 28 U.S.C. Section 1332 confers subject matter jurisdiction on this Court as the parties are completely diverse and the amount in controversy in this litigation exceeds $75,000.00, exclusive of costs and fees.

5. The Court has personal jurisdiction over this matter because Defendant is registered to do business in Ohio, does business at a number of locations within this judicial district, and many of the acts giving rise to Murphy Road's causes of action took place in this judicial district.

6. Venue is proper under 28 U.S.C. section 1391 because many of the acts giving rise to Murphy Road's causes of action took place in this judicial district and many of the witnesses who are not associated with a party are found in this judicial district.

**Murphy Road's claims are not subject to arbitration**

7. The claims in this Complaint are not subject to AAR arbitration because they are not subject to the AAR's Interchange Rules, which address certain repairs that a railroad (or its agent) performs on railcars that enter their railroad. Under the Rules, AAR signatories, like Murphy Road and Defendant, only agreed to AAR arbitration (and thus, AAR jurisdiction) for repairs performed at an AAR-approved location by an agent of the railroad. Here, Murphy Road's

claims arise from Defendant intentionally or negligently misrepresenting that it was authorized to perform repairs on Murphy Road's railcars at the Tunnel Hill Landfill (which is not an AAR-approved location for repairs) as a running repair agent for CSX Transportation, Inc. ("CSXT") (something that it is not and never was).

8. Defendant knew it could not legally bill for repairs to Murphy Road's railcars made at an unapproved location, so it purposefully misrepresented the repair location on its invoices to achieve AAR jurisdiction, so it could (and ultimately did) use that jurisdiction to its advantage through AAR arbitration.

9. The AAR's arbitration panels are not comprised of lawyers, judges, or other individuals with legal training. The AAR also does not train its arbitrators on issues like the ones central to this matter, including, without limitation, the ability to make determinations about legal matters such as tolling of statutes of limitations, whether a fact is material, whether something is fraudulent, etc.

10. Murphy Road attempted to argue these legal issues at an arbitration in which Defendant claimed Murphy Road waived the ability to challenge the appropriateness of its repairs, but the AAR's arbitration panel refused to consider them. The arbitration panel's entire finding was:

> [A]s stated during the Arbitration and Rules Committee meeting on Wednesday September 27, 2023, the Arbitration and Rules Committee ruled that the invoices were properly rendered in accordance with AAR Office Manual Rule 112 and not returned per AAR Office Manual Rule 112.H.3. Therefore, Murphy Road Recycling is responsible for remitting payment to Cathcart Rail, Inc. for the unpaid invoices totaling $692,686.75 identified in "Request for Arbitration-01-8-3-22.pdf" submitted by Cathcart Rail, Inc.

11. The plain language of the finding in the preceding paragraph shows that the arbitration panel did not consider (much less decide) the issue of whether Defendant fraudulently

(or intentionally) convinced Murphy Road that it performed repairs at the Tunnel Hill location as CSXT's running repairs agent. Indeed, it makes no mention of the fact that Defendant deprived Murphy Road of sufficient information to timely object to Defendant's repairs on grounds that Defendant lacked the authority to perform the repairs at the Tunnel Hill location or the fact that Defendant was not CSXT's running repairs agent at that location (which was not even a CSXT location). Rather, it simply reflects the panel's findings that Defendant billed Murphy Road and that Murphy Road failed to timely object to the bill.

12. In addition, the AAR's arbitration panels are comprised of the AAR's Arbitration and Rules Committee, of which Defendant, upon information and belief, is a member, but Murphy Road is not, which Murphy Road submits can compromise a panel's impartiality. Indeed, the panel demonstrated its familiarity with Defendant by designating one of its two presenters as the meeting's safety official.

13. In sum, nothing in the AAR's Interchange Rules requires Murphy Road to submit this matter to AAR arbitration. Although it is appealing the AAR arbitration panel's decision, Murphy Road is not required to bring this action through AAR arbitration because the plain language of the Interchange Rules do not require arbitration of disputes of this nature, which arise from statutory violations and/or from a party's negligent and/or intentional misstatements.

## RELEVANT FACTS

14. Murphy Road is a recycling and waste management business that operates throughout the State of Connecticut. Its business includes, without limitation, receiving waste at its facilities and then either recycling the waste or sending it to two landfills in Ohio (the "Ohio Landfills") via its fleet of railcars.

#30031581v1

15. Moving waste via rail from Connecticut to the Ohio Landfills requires Murphy Road's railcars to travel on tracks controlled and maintained by certain Class I and Short Line railroads.

16. The AAR's Interchange Rules pertain to railcars traveling from one railroad to another.

17. Five basic principles of the Interchange Rules are that:

- railroads are responsible for the conditions of all cars on their lines;
- car owners are responsible for, and chargeable with, repairs to their cars caused by ordinary wear and tear in fair service;
- the handling line is responsible for damage caused by unfair usage;
- individual rules require compliance with other AAR standards and specifications; and
- railroads must accept cars offered in interchange that comply with the Interchange Rules and referenced standards but can refuse cars that do not comply.

18. Without limitation, the Interchange Rules require railroads receiving railcars on their tracks (or their agents) to inspect those railcars and either accept or reject them. Additionally, the AAR requires receiving railroads (or their agents) to make certain "running repairs" at approved locations to the railcars that enter their track and bill the railcar owners for those repairs.

19. Appendix A to the relevant version of the Interchange Rules defines "interchange" as "[T]he transfer or delivery of a freight car from one subscriber to another as indicated in the AAR TRAIN II System."

20. Rule A(2) of the relevant version of the AAR's Office Manual provides that "[A]ll freight railroads, interchange freight car owners, and running repair agents must subscribe to the AAR Interchange Rules and be listed in FindUs.Rail." Likewise, Rule A(2)(a) states "[A]ll car repair shops and facilities must be listed in FindUs.Rail." Nothing in the Interchange Rules allows

#30031581v1

a receiving railroad to refuse to perform running repairs on another signatory to the Interchange Rules' railcar. This includes, without limitation, past failures to pay for repairs.

21. Murphy Road (which is a freight car owner) and Defendant (which is a running repair agent) are signatories to the AAR's Interchange Agreement, which means they are subject to the AAR's Interchange Rules, including those related to inspecting, accepting, rejecting, and repairing railcars.

22. Without limitation, Defendant is CSXT's running repair agent in two Ohio locations approved by the AAR: Fostoria and Upper Sandusky. Appendix A to the AAR's Office Manual defines running repair agents as:

> … a running repair contractor as listed in Find.Us.Rail performing the work of running repairs on freight cars. The running repair agent must be a signatory to the AAR Interchange Rules. Running repair agent is synonymous with various references in the AAR Interchange Rules where "repairing railroad," "repairing party," "repairing line," "billing company," and "billing road" are so noted.

23. The Tunnel Hill Landfill is one of two Ohio Landfills that accept Murphy Road's non-recyclable waste.

24. After the misrepresentation(s) at issue in this lawsuit, Murphy Road learned that CSXT does not have authority to make running repairs at the Tunnel Hill Landfill location.

**Defendant enters into a contract with Tunnel Hill Landfill to repair its railcars**

25. At some point prior to November 1, 2020, Defendant entered into a contract with Tunnel Hill Landfill to repair railcars owned by the Landfill (the "Tunnel Hill Contract") on its Tunnel Hill Landfill property in New Lexington, Ohio.

26. The impetus for the Tunnel Hill Contract was complaints from CSXT and the Federal Railroad Administration (the "FRA") about the condition of Tunnel Hill Landfill's own fleet of railcars.

27. Defendant performed its obligations under the Tunnel Hill Contract on track within and owned by the Tunnel Hill Landfill. Defendant did not perform repairs on Tunnel Hill Landfill's fleet of railcars at this location via interchange and the costs of its repairs arose from private negotiation rather than AAR standard and mandatory interchange pricing.

28. The AAR has not approved the location where Defendant repaired Tunnel Hill Landfill's railcars, and that location does not appear in FindUs.Rail.

**Defendant begins surreptitiously repairing Murphy Rail's railcars at the unapproved location within the Tunnel Hill Landfill**

29. On or about December 1, 2020, Defendant began making repairs to railcars owned by entities other than the Tunnel Hill Landfill – including repairs to Murphy Road's fleet of railcars, which caused a sharp spike in the invoices Murphy Road received from Defendant for repairs purportedly made in "interchange" – at the Tunnel Hill Landfill.

30. Defendant had no authority to repair Murphy Road's railcars at the Tunnel Hill Landfill, much less invoice Murphy Road through the Interchange Rules, because, without limitation:

- the repairs were not made in interchange; and
- the repairs were made at a location the AAR had not approved.

31. Defendant knew it could not legitimately bill Murphy Road through the Interchange Rules for the repairs it performed on Murphy Road's railcars at the Tunnel Hill Landfill location. Accordingly, Defendant sent Murphy Road invoices for the repairs it performed at the Tunnel Hill Landfill that claimed it performed the repairs at a location in Upper Sandusky, Ohio that the AAR approved.

32. After observing the sharp spike in repairs to its railcars, Murphy Road sent a November 5, 2020, email to Defendant's predecessor that complained about the unnecessary and excessive repairs it performed at that location.

33. In emails following the November 5, 2020, email to Defendant, Murphy Road stated that it did not authorize Defendant to make repairs on its railcars. In response, Defendant, on November 9, 2020, misrepresented that it was required to perform those repairs as CSXT's running repair agent, causing Murphy Road to instruct Defendant to stop making non-running repairs to its railcars.

34. In addition to their monetary value, Defendant's unauthorized, unnecessary and repetitive repairs delayed the return of Murphy Road's railcars and negatively impacted Murphy Road's ability to earn money through the use of its railcars.

35. As recently as July 1, 2022, Defendant, through its lawyer, told Murphy Road that Defendant made repairs at the Tunnel Hill Landfill location through Defendant's status as CSXT's running repairs agent.

36. After Murphy Road refused to pay Defendant's invoices, Defendant stopped repairing Murphy Road's railcars at the Tunnel Hill Landfill location by March 31, 2022. This stoppage further proves that Defendant was not making running repairs to Murphy Road's railcars pursuant to the Interchange Rules as those rules do not give receiving railroads (or their agents) the right to accept railcars but not perform necessary repairs.

**Defendant continues misrepresenting the location where it performed repairs**

37. AAR Rule 122 provides that "[T]o settle disputes or questions arising under the AAR Code of Interchange Rules between or by subscribers to said Rules, a submission must be made through the Executive Director…to receive consideration under one or more of the following

8

#30031581v1

procedures..." Subsection C of Rule 122 states, in relevant part, "[W]hen a subscriber desires the Arbitration and Rules Committee to render a decision involving a dispute between two or more subscribers, a request should be made via email to the Executive Director, Rules and Standards…"

38. Defendant filed a Request for Arbitration pursuant to the AAR's Office Manual Rule 123 against Murphy Road on August 3, 2022. This Request sought to recover, without limitation, the $587,080.12 of repairs it made to Murphy Road's railcars at the unapproved Tunnel Hill Landfill location pursuant to a theory that Murphy Road waived its right to challenge the invoices.

39. Like the invoices it sent to Murphy Road, Defendant's Request for Arbitration claimed that it performed many of the running repairs at issue at its Upper Sandusky location, which is AAR-approved and found on FindUS.Rail. However, a spreadsheet Defendant attached to that demand for arbitration revealed that Defendant made no running repairs to Murphy Road's railcars at the approved Upper Sandusky location, and that it made those repairs at the unapproved Tunnel Hill Landfill location.

40. During the arbitration process, Defendant acknowledged that it did not perform the repairs at issue in this lawsuit at a location where it acts as CSXT's running repair agent. Indeed, it admitted that CSXT has no control over the Tunnel Hill location and that it performed repairs on the Tunnel Hill Landfill's railcars pursuant to a private contract between it and the Landfill.

41. After learning of Defendant's misrepresentations about being a CSXT running repair agent at New Lexington, Murphy Road raised the defense that Defendant should not recover due to its misrepresentation of the repair location, which precludes Defendant from recovering the amount of repairs it made at the New Lexington location. However, in a one-paragraph decision, the arbitration panel refused to consider this defense, found that Murphy Road waived its right to

challenge the invoices, and awarded Defendant, without limitation, the full amount of the repairs performed at the unapproved Tunnel Hill Landfill location.

### COUNT I – OHIO DECEPTIVE TRADE PRACTICES ACT
### ORC Ann. 4165.02(A)(4)

42. Murphy Road incorporates its allegations contained in paragraphs 1 through 41.

43. In the course of its business, Defendant repeatedly made statements to Murphy Road that it had performed (and was performing) repairs to Murphy Road's railcars at a location in Upper Sandusky, Ohio, which was AAR approved. These representations were false and/or misleading because while it was making these representations, it was actually repairing Murphy Road's railcars at the Tunnel Hill Landfill location, which the AAR had not approved.

44. Murphy Road eventually learned that Defendant, in fact, made the repairs at the Tunnel Hill Landfill location and shared its knowledge with Defendant. Defendant finally acknowledged this fact, but (falsely) claimed it was doing so as CSXT's running repair agent at that location. This misrepresentation is material because Murphy Road's reliance on it caused Murphy Road not to timely take exception to the repairs Defendant made to its railcars at the Tunnel Hill location. Indeed, Defendant knew it could not legitimately bill Murphy Road through the Interchange Rules for the repairs it performed on Murphy Road's railcars at the Tunnel Hill Landfill location. Accordingly, Defendant sent Murphy Road invoices for the repairs it performed at the Tunnel Hill Landfill that claimed it performed the repairs at a location in Upper Sandusky, Ohio that the AAR approved.

45. Murphy Road reasonably relied upon Defendant's representations regarding the geographic location of the services that it was providing to Murphy Road to its detriment.

46. Defendant's misrepresentations caused Murphy Road to suffer damages.

## **COUNT II – OHIO DECEPTIVE TRADE PRACTICES ACT**
## **ORC Ann. 4165.02(A)(7) and (9)**

47. Murphy Road incorporates its allegations contained in paragraphs 1 through 46.

48. In the course of its business, Defendant repeatedly made statements to Murphy Road that it had performed (and was performing) repairs to Murphy Road's railcars at a location in Upper Sandusky, Ohio, which was AAR approved.

49. In addition, Defendant repeatedly made representations that it was CSXT's running repair agent at the Tunnel Hill Landfill location.

50. Defendant's representations were false because:

- it actually repaired Murphy Road's railcars at the Tunnel Hill Landfill location, which is not AAR approved; and
- it was not CSXT's running repair agent at the Tunnel Hill Landfill location.

51. Defendant's representation that it was CSXT's running repair agent at the Tunnel Hill Landfill location was material as Defendant intended it to (and it did) preclude Murphy Road from taking exception to/disputing Defendant's repairs and the corresponding charges within the time period provided in the AAR's Interchange Rules. Indeed, Defendant knew it could not legitimately bill Murphy Road through the Interchange Rules for the repairs it performed on Murphy Road's railcars at the Tunnel Hill Landfill location. Accordingly, Defendant sent Murphy Road invoices for the repairs it performed at the Tunnel Hill Landfill that claimed it performed the repairs at a location in Upper Sandusky, Ohio that the AAR approved.

52. Murphy Road reasonably relied upon Defendant's misrepresentations regarding its sponsorship, approval, characteristics, benefits, status, affiliation, and/or connection with CSXT relative to the services it was providing Murphy Road at the Tunnel Hill Landfill to its detriment.

53. Likewise, Murphy Road reasonably relied upon Defendant's misrepresentations that its services were of a particular standard, quality, or grade – namely that it was a CSXT running repair agent at the Tunnel Hill Landfill – to its detriment.

54. Defendant's misrepresentations caused Murphy Road to suffer damages.

### COUNT III – FRAUD/INTENTIONAL MISREPRESENTATION

55. Murphy Road incorporates its allegations contained in paragraphs 1 through 54.

56. Defendant fraudulently stated as a fact that the AAR approved it – as CSXT's agent – to perform running repairs on Murphy Road's railcars at New Lexington. However, Defendant knew this statement was untrue when it made it.

57. Defendant falsely held itself out as CSXT's running repair agent at New Lexington to induce Murphy Road to pay Defendant's fraudulent invoices. The statement harmed Murphy Road because, had Murphy Road known the truth of the matter, it would have timely challenged it.

### COUNT IV – NEGLIGENT MISREPRESENTATION

58. Murphy Road incorporates its allegations contained in paragraphs 1 through 57.

59. Pleading in the alternative, Defendant, in the course of its business, negligently supplied false information regarding its authority to perform running repairs on Murphy Road's railcars that guided Murphy Road's decisions in a business transaction. These acts caused Murphy Road to suffer harm.

### REQUEST FOR RELIEF

Due to Defendant Cathcart Rail, Inc.'s unlawful actions, Plaintiff Murphy Road Recycling, LLC respectfully requests that the Court:

A. issue process and allow Murphy Road to serve it on Defendant;

#30031581v1

B.      require Defendant to answer this Complaint in accordance with Ohio's Rules of Civil Procedure;

C.      find in Murphy Road's favor on all of its claims and award all damages available to it, including, without limitation, actual, compensatory, and punitive damages;

D.      award it the attorneys' fees it incurs in prosecuting this matter; and

E.      award any other relief to Murphy Road that the Court deems just and proper.

Respectfully submitted,

*/s/ Christopher W. Cardwell*
Christopher W. Cardwell (*pro hac vice* pending)
GULLETT SANFORD ROBINSON & MARTIN PLLC
150 Third Avenue South, Suite 1700
Nashville, TN  37201
Telephone:    (615) 244-4994
Facsimile:    (615) 256-6339
ccardwell@gsrm.com

*/s/ James R. Carnes*
James R. Carnes (0070005)
SHUMAKER, LOOP & KENDRICK, LLP
1000 Jackson Street
Toledo, OH  43604
Telephone:    (419) 241-9000
Facsimile:    (419) 241-6894
jcarnes@shumaker.com

*Attorneys for Plaintiff, Murphy Road Recycling, LLC*